UNITED STATES *vs.* COVILLAND ET AL.

1. A confirmation of a Mexican land title in a proceeding conducted in ?? name of the original grantee is binding upon the United States, and upon all the assignees of the original grantee.

2. When a survey is executed conformably to the decree of confirmation, the alienees of the original grantee may intervene to protect their own rights.

3. When the survey is completed, and a patent issued to the original grantee, his assignees can assert their rights against him in the ordinary courts of the country.

4. But the extraordinary tribunals, proceeding under the act of 1851, cannot order a second patent to issue for a part of the land previously confirmed to the original grantee.

5. If such a decree were made, it would not bind the Government, and would be a nullity as between the original grantee and his assignees.

Charles Covilland, José Manuel Ramirez, William H. Sampson, administrator of John Sampson, Charles B. Sampson, Robert B. Buchanan, and Gabriel N. Suezy, presented their petition to the Board of Land Commissioners, at San Francisco, on

the 31st of May, 1852, claiming to be confirmed in their title to two tracts of land lying on the Yuba and the Feather rivers. The title set forth in the petition was derived from Captain John A. Sutter, whom the petitioners alleged to be a regular and legal grantee from the Mexican Government. It was alleged that Sutter had two grants, one made by Governor Alvarado for eleven leagues, in 1841, and the other by Micheltorena, in 1845, for twenty-two leagues, and the land claimed in the present case was averred to be part of these grants. The conveyances from Sutter to the petitioners were set out and produced before the board.

The evidence which the petitioners laid before the board and before the District Court to establish the title of Sutter under his two grants was nearly the same in this case as in the case of *Sutter* vs. *The United States,* (21 How., 170,) where there was a final decree confirming his claim under the title from Alvarado for eleven leagues, and rejecting that under the Micheltorena title for twenty-two leagues.

The record does not show precisely what quantity of land was conveyed by Sutter to Covilland and his associates, but the boundaries described in the deeds include a comparatively small part of Sutter's original claim. The Board of Commissioners confirmed the claim of the petitioners for the quantity of land included in their deeds as part and parcel of the lands granted to Sutter, and previously confirmed by the board to him.

Upon appeal by the United States to the District Court, the decree of the board was confirmed with certain immaterial modifications, and this appeal to the Supreme Court was then taken by the United States.

*Mr. Stanton,* of Washington city, for the United States, resisted the claim of the present parties on the grounds :

1. That the title of Sutter to the whole grant of eleven leagues being confirmed, the authority of this court is exhausted.

2. That the specific tract claimed in this case cannot be ascertained until the Sutter tract of New Helvetia shall be located.

*Mr. Crittenden*, of Kentucky, for the appellees. 1. The petition of the claimants and proceedings thereon are in strict accordance with the statute. (9 Stat. at Large, 633.) 2. There is no error in the decree. 3. The decree cannot be made erroneous by a fact not appearing in the record, namely, that a patent had been decreed or issued to Sutter for the whole tract of land. 4. The issuing of a patent to the claimants is no part of the decree, it is only consequential; and though the issuing of a patent to Sutter for the whole tract might be a valid reason to justify the Executive Department for refusing to issue a patent to the claimants for a part, yet that does not make the decree itself erroneous. It only makes ineffectual a part of the decree, or defeats what would otherwise have been a consequence of the decree. 5. The decree contains nothing to the prejudice of the United States, and ought not, therefore, to be reversed.

Mr. Justice CATRON. Covilland and four others petitioned to have confirmed to them two tracts of land, as joint owners, assuming to derive title from John A. Sutter. His claim was confirmed for eleven leagues by the decision of this court, in 1858, and which judgment is reported in 21 How., 170. It appeared, in that case, that Sutter had assigned to others a great portion of his original grant; nevertheless, the suit against the United States seeking a confirmation was prosecuted in his name, regardless of that fact.

That a confirmation in the name of the original grantee, divesting the legal title of the United States, is binding on the Government and on the assignees, is the established doctrine of this court. It was so held in the case of Percheman, (7 Peters, 56,) which decision has been adhered to, and was recognised in Sutter's case, (21 How., 182,) of which this case is, in fact, a part.

To this course of decision the courts adjudicating titles to lands situate in California are requested to conform by the 11th section of the act of March 3, 1851; nor can their decisions affect injuriously the rights of assignees. The 15th section of the act so provides.

The decree made by this court in 1858, in favor of Sutter, remanded the proceeding to the surveyor general's office in California, to have a survey made of the land conformably to our decree, to the end of having a patent founded on the survey, divesting the title of the United States. In executing the survey, Sutter's assignees may intervene and protect their rights, according to the act of June 14, 1860.

We are not aware that the survey has been executed; but when it is finally completed, and a patent issued to Sutter, his assignees can assert their rights against him in the ordinary courts of the country. But the extraordinary tribunals, proceeding by force of the act of 1851, cannot order a second patent to issue for a portion of Sutter's grant. Such judgment could have no effect against the Government; and as between Sutter and the petitioners, would be a nullity, being prohibited by the 15th section of the act of 1851.

_It is ordered that the judgment be reversed, and the petition be dismissed._